# UNITED STATES DISTRICT COURT

for the

Western District of Washington

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.   MJ20-638 |
| Two Target Facebook Accounts: Vanity Name: donna.atalig.7, User ID 100052296763592 and Vanity Name: amy.jeske.315, User ID 100042481957785 | ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, which is attached hereto and incorporated herein by this reference.

located in the _____ Northern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, which is attached hereto incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. § 1951 | Conspiracy to Commit Robbery |
| Title 21 U.S.C. § 844(a) | Possession of a Controlled Substance |

The application is based on these facts:

✓ See attached Affidavit of FBI Special Agent Jack Kane, continued on the attached sheet

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

---

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

*Applicant's signature*

Special Agent Jack Kane, FBI

*Printed name and title*

◯ The foregoing affidavit was sworn to before me and signed in my presence, or

◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: _____ 10/06/2020 _____

*Judge's signature*

City and state: Seattle, Washington

Hon. Brian A. Tsuchida, Chief United States Magistrate Judge

*Printed name and title*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ATTACHMENT A

### DESCRIPTION OF LOCATION TO BE SEARCHED

This warrant applies to information associated with the following Facebook accounts (FACEBOOK ACCOUNTS):

FACEBOOK ACCOUNT
Display Name: Donna Atalig
Vanity Name: donna.atalig.7
User ID#:  100052296763592

FACEBOOK ACCOUNT
Display Name: Amy Jeske
Vanity Name: amy.jeske.315
User ID#:  100042481957785

As well as other subscriber and log records associated with the accounts, which are stored at premises owned, maintained, controlled, and operated by Facebook, Inc., an electronic communications service and remote computing services provider headquartered at 1601 Willow Road, Menlo Park, California, 94025.

For both accounts, the warrant is limited to the above-referenced information for the time period from August 1, 2020 through the present.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT B**

## I.  INFORMATION TO BE DISCLOSED

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, Inc., including any communications, records, files, logs, posts, payment records, or information that has been deleted but is still available to Facebook, or has been preserved pursuant to requests made under 18 U.S.C. § 2703(f) on or about September 21, 2020, Facebook is required to disclose the following information to the government for each account or identifier listed in Attachment A:

(a)     All contact information, including full name, user identification number, birth date, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

(b)     All Photoprints, including all photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them;

(c)     All Neoprints, including profile contact information; Mini-Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(d)     All other communications and messages made or received by the user, including all private messages and pending "Friend" requests;

(e)     All IP logs, including all records of the IP addresses that logged into the account(s) and associated geolocation data;

(f)     All information about the user's access and use of Facebook Marketplace;

ATTACHMENT B - 1
USAO #2020R00825

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    (g)    The length of service (including start date), the types of service utilized by
2           the user, and the means and source of any payments associated with the
3           service (including any credit or bank account number;
4    (h)    All privacy settings and other account settings;
5    (i)    All records pertaining to communications between Facebook and any
6           person regarding the user or the user's Facebook account, including
7           contacts with support services and records of actions taken.
8    //
9    //
10   //
11   //

ATTACHMENT B - 2
USAO #2020R00825

## II.  INFORMATION TO BE SEIZED BY THE GOVERNMENT

All information described above in Section I that constitutes fruits, contraband, evidence and instrumentalities of the crimes of possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c); unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g); conspiracy to commit robbery and robbery, in violation of 18 U.S.C. § 1951; and/or possession of a controlled substance, in violation of 21 U.S.C. § 844(a), for each account or identifier listed on Attachment A, including information pertaining to the following matters:

(a)     Records that identify any persons who use or access the account specified, or who exercise in any way any dominion or control over the same, including geolocation data associated with such use or access;

(b)     Records that identify associates of the account specified;

(d)     Records (including messages, posts, notes, drafts, photographs, videos, or other documents) relating to robbery that occurred on or about September 2, 2020, or the sale of methamphetamine discussed for the same time period, including records related to the motivation for the robbery;

(e)     Records related to the location or whereabouts of the account users on or about September 2, 2020; and

(f)     Records identifying devices used to connect to or access Facebook services during the requested time period.

//
//
//

ATTACHMENT B - 3
USAO #2020R00825

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1         This warrant authorizes a review of the electronically stored data,

2   communications, or other records and information seized, copied or disclosed pursuant to

3   this warrant in order to locate evidence, fruits, and instrumentalities described in this

4   warrant.  The review of this electronic data may be conducted by any government

5   personnel assisting in the investigation, who may include, in addition to law enforcement

6   officers and agents, attorneys for the government, attorney support staff, and technical

7   experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the seized,

8   copied or disclosed electronic data to the custody and control of attorneys for the

9   government and their staff.

10  //

11  //

12  //

13  //

14  //

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT B - 4
USAO #2020R00825

**CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS**
**PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)**

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct.  I am employed by Facebook, and my official title is _____.  I am a custodian of records for Facebook.  I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Facebook, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.      such records were kept in the ordinary course of a regularly conducted business activity of Facebook; and

c.      such records were made by Facebook as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

Date: _____   Signature: _____

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

## **AFFIDAVIT**

2

3   STATE OF WASHINGTON      )
                                      )   ss
4   COUNTY OF WHATCOM        )
     _____)

5

6      1.     I, Jack Kane, a Special Agent with the Federal Bureau of Investigation,

7   having been duly sworn, state as follows:

8                **I.  INTRODUCTION AND PURPOSE OF AFFIDAVIT**

9      2.     I make this Affidavit in support of an application under Rule 41 of the

10  Federal Rules of Criminal Procedure for a warrant for information associated with the

11  following accounts: Facebook User ID 100052296763592, Account/Username Donna

12  Atalig; and Facebook User ID 100042481957785, Account/Username Amy Jeske (the

13  "FACEBOOK ACCOUNTS"), as more fully described in Attachment A, that are stored

14  at the premises controlled by Facebook, Inc., a social media platform headquartered at

15  1601 Willow Road, Menlo Park, CA 94025.

16     3.     The Federal Bureau of Investigation is conducting an investigation into

17  whether certain individuals described below committed or have information regarding the

18  crimes of possession of a firearm in furtherance of a crime of violence, in violation of 18

19  U.S.C. § 924(c); unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g);

20  conspiracy to commit robbery and robbery, in violation of 18 U.S.C. § 1951; and

21  possession of a controlled substance, in violation of 21 U.S.C. § 844(a).  As described

22  herein, there is probable cause to believe that the FACEBOOK ACCOUNTS contain

23  evidence of these crimes.

24     4.     This affidavit is made in support of an application for a search warrant

25  under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Facebook, Inc.

26  to disclose to the government copies of the information (including the content of

27  communications) further described in Section I of Attachment B.  Upon receipt of the

28  information described in Section I of Attachment B, government-authorized persons will

AFFIDAVIT OF SPECIAL AGENT JACK KANE - 1
USAO #2020R00825

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  review that information to locate the items described in Section II of Attachment B.

2      5.     This warrant and affidavit are being presented electronically pursuant to
3  Federal Rules of Criminal Procedure Rule 4.1.

4                    **II. <u>AFFIANT BACKGROUND</u>**

5      2.     I am a Special Agent with the Federal Bureau of Investigation (FBI)
6  assigned to the Bellingham, Washington, Resident Agency of the Seattle, Washington
7  Field Office. I have been an FBI Special Agent for approximately six years. Prior to that,
8  I was a military intelligence officer for approximately five years. I am an investigative
9  and law enforcement officer of the United States within the meaning of Title 18, United
10 States Code, Section 2510(7). My duties as a Special Agent include the full-time
11 investigation of a wide range of federal criminal offenses. My responsibilities include
12 overseeing the Northwestern Safe Trails Task Force, which focuses on the investigation
13 of violent crime, narcotics trafficking, and other federal offenses in Northwest
14 Washington's Indian Country. I have received specialized training in the enforcement and
15 investigation of the Controlled Substance Act.

16     3.     The facts set forth in this Affidavit are based on my own personal
17 knowledge; knowledge obtained from other individuals during my participation in this
18 investigation, including other law enforcement officers; review of documents and records
19 related to this investigation; communications with others who have personal knowledge
20 of the events and circumstances described herein; and information gained through my
21 training and experience.

22     4.     Because this Affidavit is submitted for the limited purpose of establishing
23 probable cause in support of the application for a search warrant, it does not set forth
24 each and every fact that I or others have learned during the course of this investigation.  I
25 have set forth only the facts that I believe are relevant to the determination of probable
26 cause to believe that evidence, fruits, and instrumentalities of violations of the crimes of
27 possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C.
28 § 924(c); unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g); conspiracy

AFFIDAVIT OF SPECIAL AGENT JACK KANE - 2
USAO #2020R00825

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

to commit robbery, in violation of 18 U.S.C. § 1951; and possession of a controlled substance, in violation of 21 U.S.C. § 844(a), will be found in the FACEBOOK ACCOUNTS.

### III. SUMMARY OF INVESTIGATION

2.     On September 2, 2020, at approximately 3:37 A.M., Stillaguamish Police Officer Keith Poteet was dispatched to a robbery with a weapon call at the Stillaguamish Tribe's Angel of the Winds Casino in Arlington, Washington. Officer Poteet met with the victim who had reported the robbery, A.L., on the first floor of the parking garage at the casino.

3.     Officer Poteet interviewed A.L., who reported that she had been talking with an acquaintance that she knew to be "Donna Ataliy" via Facebook Messenger earlier that same morning and that DUMALE was transient and needed financial assistance. Law enforcement later identified "Donna Ataliy" as DONNA DUMALE.[1] A.L. said that she agreed to meet up with DUMALE at the Angel of the Winds Casino to give her fifty dollars. A.L. reported that she met up with DUMALE later that same morning in the main parking area of the casino, and she got into a vehicle that DUMALE was in with three other individuals. She described the vehicle as a gold Acura (the "Acura"). A.L. said that she got into the front passenger seat of the Acura. The driver was a male who identified himself as "Jason" (later identified as JEFFREY JONASSON), DUMALE was seated in the backseat behind the driver, and a second male sat behind A.L. in the backseat with the name of "Matt" (later identified as JOHN LAMBERT). A.L. said that JONASSON drove the Acura to the parking garage at the casino where they went to the first floor of the garage and parked.

---

[1] An officer that was on duty that morning from the Snohomish County Sheriff's Office conducted local law enforcement database checks and social media checks and was able to match the photo from "Donna Ataliy's" Facebook profile page to the Washington State Department of Licensing (DOL) photo of DONNA DUMALE. I obtained a Washington State DOL photo of DUMALE and confirmed that it was the same person in the profile picture of the "Donna Atiliy" Facebook profile.

AFFIDAVIT OF SPECIAL AGENT JACK KANE - 3
USAO #2020R00825

4.      A.L. further stated that after JONASSON put the Acura into park, JONASSON pulled out a gun and pointed it at her, and that JONASSON demanded A.L. give him everything. A.L. said that JONASSON grabbed her wallet which was tucked between her legs and he also asked for her phone. A.L. said that she told JONASSON she did not have her phone on her, and he then told her to "get the fuck out of the car and you better not say a word to anyone." A.L. reported that she exited the Acura and walked to the casino to seek help from security. A.L. described the weapon as a small black firearm, possibly a .25 auto.

5.      Officer Poteet immediately requested assistance from casino security to identify the Acura using the casino's security cameras. Casino security was able to identify the license plate on the Acura as BTJ9389 and to identify it as a beige 1994 Acura Legend.

6.      Also during the interview, A.L. advised Officer Poteet that she had received a text message from her bank that there had just been activity on one of her stolen credit cards at a Fred Meyer store in "Mt," which Officer Poteet understood to mean Mount Vernon, although the closest Fred Meyer to Mount Vernon is actually in the Burlington, the city it borders. Officer Poteet had previously released a BOLO (be on the lookout) for the Acura to the police dispatch center in Snohomish County. After learning about the credit card activity in Mount Vernon/Burlington, he notified Skagit County dispatch of the BOLO for the Acura and its occupants.

7.      At 5:37 A.M., Officer Poteet was contacted by the Burlington Police Department and advised they had located the Acura and one male was being detained. The detained male had been located in the vehicle and matched the description of the male that was in the backseat of the Acura during the robbery. The two other individuals described by A.L. were not with the Acura when the officers approached it. The detained male was identified as JOHN LAMBERT. A short while later, Officer Poteet received a call from a Burlington Police Officer that advised the second male, identified as

1  JEFFREY THOMAS JONASSON, was in custody and had been in possession of a
2  handgun.

3          8.      I reviewed the Burlington Police reports from this incident and a summary
4  of the reports is as follows:  On the morning of September 2, 2020, officers from the
5  Burlington Police Department located the BOLO vehicle parked in the parking lot of the
6  Fred Meyer in Burlington, WA. The officers approached the Acura and contacted
7  LAMBERT seated in the backseat. LAMBERT was subsequently taken into custody.
8  LAMBERT was searched and was found to have two separate small bags that contained
9  suspected methamphetamine and heroin. Officers located JONASSON in the immediate
10 area walking away from the Acura and contacted him because he matched the description
11 of the second subject from the armed robbery at the casino. JONASSON briefly spoke
12 with the officer and then took off running to avoid arrest. The officer took chase after
13 him, and after a short pursuit, JONASSON surrendered and was taken into custody.
14 Officers found a small caliber pistol in the grass in the immediate area near where
15 JONASSON was taken into custody, and along the same path that the officers had
16 observed him running during the pursuit. This pistol matched the description of the
17 weapon used in the armed robbery. JONASSON was also found to be in possession of
18 suspected heroin and methamphetamine. The officers read JONASSON his *Miranda*
19 rights prior to any questioning, and JONASSON agreed to speak with them. JONASSON
20 subsequently admitted that he had been in possession of the firearm located in the grass
21 and that he had discarded it while the officer was chasing him. JONASSON was
22 subsequently transported to the Burlington Police Department for further questioning.

23         9.      At the time he was arrested, JONASSON had keys for the Acura on his
24 person.

25         10.     I have reviewed Burlington Police Officer Wilson's report from this
26 incident, and she reported observing multiple items on the floor of the Acura that she
27 could see from the outside and through the window of the vehicle, including two cards on
28 the floor bearing A.L.'s name. Also visible from outside the car is a capped syringe.

AFFIDAVIT OF SPECIAL AGENT JACK KANE - 5
USAO #2020R00825

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

11.    That same morning, JONASSON was interviewed by a detective from the Burlington Police Department.  The interview was audio and video recorded and transcribed. At the beginning of the interview, JONASSON was advised of his *Miranda* Rights and agreed to waive his rights and continue answering questions from the detective. JONASSON initially stated that he was never in possession of the firearm, he had not driven the Acura and he was not the one that robbed A.L. at the casino. JONASSON stated that the second male in the car was the one who had robbed A.L. at gunpoint.  JONASSON also claimed that this person had threatened him and DUMALE (who JONASSON referred to as "Donna") with the gun. However, after further questioning, JONASSON admitted that he was the driver of the Acura when they picked up A.L. at the casino and that he robbed her by pointing a gun at her head and taking her wallet. According to JONASSON, DUMALE had initially contacted A.L. to set up a deal to buy methamphetamine and the plan was to rob A.L. of the drugs once she entered the Acura. JONASSON said that he was the driver of the Acura when A.L. entered the front passenger seat at the casino. He said he drove the Acura around the parking lot to another location, pointed the gun at her, took her wallet, and told her to get out of the vehicle. JONASSON said it was DUMALE's plan to conduct the robbery and JONASSON originally got the gun from LAMBERT, but JONASSON was the one that was in possession of the gun and pointed it at A.L. during the robbery.  JONASSON claimed that he robbed A.L. at gunpoint because DUMALE and LAMBERT told him to do it and LAMBERT handed him the gun.  JONASSON said that "[t]hey just wanted me to rob her because they wanted dope," and that "fucking [A.L.] fucked Donna and Donna wanted me to rob her because she wanted to get her back at her."  JONASSON said that the robbery was not about money, and that "[w]e just wanted the dope." He also said that he gave the proceeds of the robbery (A.L.'s wallet and the drugs) to Donna.

12.    That same morning, LAMBERT was interviewed by a detective from the Burlington Police Department. The interview was audio and video recorded and transcribed. At the beginning of the interview, LAMBERT was advised of his *Miranda*

AFFIDAVIT OF SPECIAL AGENT JACK KANE - 6
USAO #2020R00825

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Rights, and agreed to waive his rights and continue answering questions from the

2   detective. LAMBERT advised that he was with JONASSON earlier that same day when

3   they met up with DUMALE, who he referred to as "Donna." LAMBERT said it was

4   DUMALE's idea to rob A.L. because of something that A.L. had recently done to

5   DUMALE and this was revenge. LAMBERT said that DUMALE talked JONASSON

6   into committing the robbery and denied that he had given the gun to JONASSON.

7   LAMBERT said he never touched the pistol and was never in possession of it, although

8   JONASSON had showed him the pistol the previous day. LAMBERT reported that he

9   was seated in the backseat of the Acura when they picked up A.L. at the casino and

10  robbed her. LAMBERT said he was never in possession of the firearm, did not drive the

11  Acura, and was not the one that robbed A.L. LAMBERT reported that after A.L. exited

12  the Acura and they left the casino, JONASSON and DUMALE went through A.L.'s

13  personal belongings in her wallet. They also found "clear" in her wallet, among other

14  things.

15          13.     On September 2, 2020, Officer Keith Poteet and I interviewed A.L. in

16  LaConner, Washington. A.L. initially advised that she met with DUMALE (who she

17  called "Donna"), JONASSON, and LAMBERT to give them fifty dollars for a hotel

18  room because she wanted to help them out and they needed money. Later in the

19  interview, she admitted that she was lying and that the true reason she met them was to

20  sell them methamphetamine. A.L. explained that she initially lied because she was afraid

21  to admit to a law enforcement officer that she was selling drugs. A.L. explained that

22  earlier that morning, she communicated with DUMALE via Facebook Messenger and

23  they agreed to meet at the Angel of the Winds Casino so that A.L. could sell a "ball of

24  clear" to DUMALE's friend for one hundred dollars. She described the amount of "clear"

25  (methamphetamine) she arranged to buy as 1/8 of an ounce, or 3.5 grams.  A.L. said that

26  she met DUMALE in the parking lot of the Angel of the Winds Casino. A.L. said that

27  she entered the passenger side front seat of the Acura. She did not recognize the male driver

28  or another male in the backseat and only recognized DUMALE in the backseat of the

AFFIDAVIT OF SPECIAL AGENT JACK KANE - 7
USAO #2020R00825

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   vehicle. The driver drove the Acura to the first floor of the parking garage, parked it, and

2   pointed a gun at her head. A.L. said that the driver told her to give him her wallet and her

3   phone. He reached over and took her wallet from between her legs and she told him she

4   did not have her phone in her possession. According to A.L., the driver told her to get out

5   of the vehicle and not to tell anyone what happened. She exited the Acura and went

6   directly to casino security to seek help. A.L. further indicated that the wallet she was

7   forced to give to the driver contained her credit cards and identification, the 3.5 grams of

8   methamphetamine that she had intended to sell (in a clear plastic bag), an exacto knife

9   and a small taser she had for personal use.

10      14.      During the interview with A.L., she showed me a conversation she had with

11  DUMALE (Donna) the morning of the robbery via Facebook Messenger. I subsequently

12  took photos of this conversation. The conversation began at 2:37 A.M. on September 2,

13  2020 and went as follows:

14        Donna:        Hey. I got someone who wants day

15        A.L.:         Hi. How much

16        Donna:        Blake says you have a ball

17        A.L.:         I do and u know its 100 a ball

18        Donna:        Yah

19        A.L.:         Who is it for

20        Donna:        My homegirls cousin. Way

21        A.L.:         Do I know this person

22        Donna:        Hes leaving. No.

23        A.L.:         Angels

24        Donna:        I don't thnk. I just saw you

25        A.L.:         Saw me where

26        Donna:        Playing here. Blake pointed you out

27        A.L.:         I left and headed to angels

28        Donna:        Ok I'll be there

| | | |
|---|---|---|
| 1 | A.L.: | Ok |
| 2 | Donna: | I cant go in I'm 86 from there |
| 3 | A.L.: | Ok just let me know and I will come out |
| 4 | Donna: | K |
| 5 | (2:51 AM) | |
| 6 | A.L.: | How long till u get here |
| 7 | (3:03 AM) | |
| 8 | Donna: | Here. We're at the hotel side. 4 rows from the hotel side. Wya. |
| 9 | A.L.: | Sorry stopped to grab something to eat bt there soon |
| 10 | Donna: | Dude you coming out because some bitch is out here trying to talk |
| 11 | Donna: | 5th row facing the hotel side |
| 12 | A.L.: | What bitch and y. |
| 13 | A.L.: | Can u meet me at the gas station right when u get off the freeway |
| 14 | | and I will be there |
| 15 | Donna: | Dude |
| 16 | A.L.: | Sorry |
| 17 | Donna: | What do you mean sorry. We're right here |
| 18 | A.L.: | Im not the one driving |
| 19 | Donna: | He's already thinking this is a set up |
| 20 | A.L.: | Its not |
| 21 | Donna: | He said if that's the case why cant you meet right here and we bring |
| 22 | | you there. You said when you got here you'd come out. Now its |
| 23 | | changing he doesn't like how the meet is going. Are you there |
| 24 | | already |
| 25 | A.L.: | I don't need to go there im almost there I thought it would be easier |
| 26 | | for u guys and im almost there |
| 27 | Donna: | I just met him by my homegirl and I was trying to help him out |
| 28 | A.L.: | Ok |

| | | |
|---|---|---|
| 1 | Donna: | Because he was gonna help me out |
| 2 | A.L.: | Ok |
| 3 | Donna: | With my room |
| 4 | A.L.: | Im almost there |
| 5 | Donna: | Almost where |
| 6 | A.L.: | To the gas station |
| 7 | Donna: | Wow. What car |
| 8 | A.L.: | What is this person's name |
| 9 | Donna: | Jason. Why |
| 10 | A.L.: | Just asking. Cuz he sounded familiar. Coming up to exit about to get |
| 11 | | off freeway |
| 12 | Donna: | Wtf. So your not coming |
| 13 | A.L.: | No I am. I was letting you know where I was. |
| 14 | Donna: | Oh |
| 15 | A.L.: | Ya |
| 16 | Donna: | Who you with |
| 17 | A.L.: | My friend Tom |
| 18 | Donna: | How far are you |
| 19 | A.L.: | Im here |
| 20 | Donna: | Where |
| 21 | A.L.: | In the parking lot |
| 22 | (3:58 A.M.) | |
| 23 | A.L.: | What the fuck that was pretty fucked up and I want my stuff back |
| 24 | (4:12 A.M.) | |
| 25 | Donna: | Help me |
| 26 | A.L.: | Where you at |
| 27 | (11:46 A.M.) | |
| 28 | A.L.: | Hello |

AFFIDAVIT OF SPECIAL AGENT JACK KANE - 10
USAO #2020R00825

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

15.     I have reviewed security camera surveillance footage from the Angel of the Winds Casino from the morning of September 2, 2020 and observed the following (all times are approximate):

3:03 A.M. – **TARGET VEHICLE** (the Acura) observed driving south along the west parking lot of the casino.

3:05 A.M. – **TARGET VEHICLE** observed circling around in the main parking lot of the casino.

3:06 A.M. – **TARGET VEHICLE** parked backed into the fifth row of vehicles on the hotel side of the parking lot, with the vehicle facing the hotel.

3:22 A.M. – **TARGET VEHICLE** pulled out of parking spot, re-located to a parking spot further south in the parking lot and parked.

3:31 A.M. – A woman walked up to and entered the passenger side front seat of the **TARGET VEHICLE**.

3:32 A.M. – **TARGET VEHICLE** departs and drives around the casino and into the parking garage.

3:33 A.M. – **TARGET VEHICLE** parked on the first floor of the parking garage for approximately 30 seconds and the female exited the front passenger door of the vehicle. The female walked away from the **TARGET VEHICLE** and the **TARGET VEHICLE** departed the parking garage.

16.     I conducted a Washington State Department of Licensing (DOL) query for license plate BTJ9389. The vehicle came back as a 1994 beige Acura Legend registered to Elizabeth Cummins at an address on 20th Street in Snohomish, Washington.

17.     Officer Poteet has informed me that he had a conversation with an officer from the Lake Stevens Police Department on September 2, 2020.  The Lake Stevens officer advised Officer Poteet of the registered owner's attempt to report the Acura stolen because her boyfriend (name unknown) had lent the vehicle to somebody else, and she had not given her boyfriend permission to do so. The officer advised the registered owner that this was a civil issue and that the Acura would not be reported as stolen.

AFFIDAVIT OF SPECIAL AGENT JACK KANE - 11
USAO #2020R00825

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    18.    On September 2, 2020, subsequent to the arrests of JONASSON and

2    LAMBERT at the Fred Meyer in Burlington, WA, the Acura was seized, secured and

3    towed to the Snohomish County Sheriff's Office North Precinct. It remains secured in an

4    evidence bay.

5    19.    The Burlington Police Department weighed the suspected

6    methamphetamine found on JONASSON's person and found it to weigh 3.5 grams.  The

7    substance field tested positive for methamphetamine.

8    20.    Law enforcement showed photographs of LAMBERT and JONASSON to

9    A.L., who identified them as the two males who had robbed her.  A.L. identified

10   JONASSON as the driver who pointed the gun at her, and LAMBERT as the second male

11   in the vehicle.

12   21.    On September 11, 2020, the Honorable Michelle L. Peterson, United States

13   Magistrate Judge, issued a warrant authorizing a search of the Acura.  Law enforcement

14   executed the warrant and seized from the vehicle 41 rounds of ammunition, two cellular

15   telephones, a pistol holster, and five casino players' cards with A.L.'s name on them.

16   22.    During the interview of A.L. on September 2, 2020, after I took photos the

17   Facebook Messenger conversation between A.L. and DUMALE, I also took a photo of

18   the Facebook profile page for DUMALE. The name listed on her profile is "Donna

19   Atalig" and I subsequently matched this profile with Facebook User ID

20   100052296763592, Account/Username donna.atalig.7.

21   23.    On September 15, 2020, I asked A.L. to take a screenshot of her Facebook

22   profile page and send it to me so that I could confirm her account. She sent me a

23   screenshot of a Facebook profile that had the name Amy Jeske. I subsequently matched

24   this profile with Facebook User ID 100042481957785, Account/Username

25   amy.jeske.315. Additionally, I conducted an open source search in the CLEAR database

26   and found that A.L. has gone by the name "Amy Jeske" in the past and it is listed as an

27   AKA for her.

28

AFFIDAVIT OF SPECIAL AGENT JACK KANE - 12
USAO #2020R00825

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    24.    Based on the above information, I believe it is likely that records from the

2  FACEBOOK ACCOUNTS will contain information on the purchase of

3  methamphetamine that was arranged by DUMALE, as well as information on the

4  planning of the robbery and DUMALE's reasons for targeting A.L. in the robbery.  For

5  both of the FACEBOOK ACCOUNTS, I seek records from Facebook for the time period

6  August 1, 2020 through the present because the robbery and assault occurred on or about

7  September 2, 2020 and it is relevant to go back approximately one month to look for

8  information on DUMALE's motive for the robbery and the advance planning of the

9  robbery.

10    **IV. BACKGROUND REGARDING FACEBOOK'S SERVICES**

11    25.    Facebook, Inc. owns and operates the free-access social networking website

12  Facebook.com, accessed at http://www.facebook.com.  Facebook allows its subscribers to

13  establish personal accounts.  Subscribers can then use their accounts to share written

14  news, communications, photographs, videos, and other information with other Facebook

15  users, and sometimes with the general public; to purchase and sell things, play games,

16  and engage in numerous additional computer based activity.

17    26.    A Facebook subscriber typically creates a personal profile using photos of

18  him/herself and a name or nickname their friends and family know.  This permits friends

19  and family to find the subscriber's account.  Facebook asks subscribers to provide basic

20  contact information.  This may include the subscriber's full name, birth date, contact e-

21  mail addresses, physical address (city, state, zip code, country), telephone numbers,

22  screen names, associated websites, and other personal identifiers.  Subscribers can list

23  credit, debit or other financial account numbers for use when making purchases on or

24  through Facebook.  Facebook also asks subscribers to create an account password.  The

25  password, known only to the subscriber (and anyone to whom s/he gives it) limits access

26  to the account.  Only someone logged in with the password can change profile details,

27

28

AFFIDAVIT OF SPECIAL AGENT JACK KANE - 13
USAO #2020R00825

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   profile photographs or privacy settings.[2]  Only a person who has logged into the account

2   with a password can post on the "Wall,"[3] send messages (similar to text messaging), or

3   send friend requests under the identity of the account owner.  It is my understanding that

4   Facebook subscribers rarely share the password to their accounts.  There is little purpose

5   in sharing passwords, because anyone whom the account owner permits can post

6   messages on the user's "Wall."

7         27.    Subscribers can select different levels of privacy for the communications

8   and information associated with their Facebook accounts.  By adjusting these privacy

9   settings, a subscriber can make profile information, status updates, check-ins, and other

10   posted material available only to himself or herself, to particular Facebook users, to all

11   Facebook users, or to anyone with access to the Internet, including people who are not

12   Facebook users.

13         28.    Facebook subscribers can create personal profiles that include photographs,

14   personal statistics such as birthdate, schooling, employer, lists of personal interests, and

15   other information.  Subscribers can also post "check-ins"[4] and "status updates" about

16   their whereabouts and actions, as well as links to videos, photographs, articles, and other

17   items available elsewhere on the Internet.  Facebook subscribers can also post

18   information about upcoming "events," such as social occasions, by listing the event's

19   time, location, host, and guest list.

20         29.    A subscriber can also connect directly with individual Facebook users by

21   sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the

22   request, then the two users will become "Friends" for purposes of Facebook and can

23   exchange communications or view information about each other.  Each Facebook user's

24   account includes a list of that user's "Friends" and a "News Feed," which highlights

25

26   [2] Subscribers must also be logged into their accounts to make purchases, post ads, make comments, adjust
       notifications they receive and to change other aspects of their accounts.

27   [3] A "Wall" in a particular subscriber's Facebook page is a space where the subscriber and his or her "Friends" (if
       permitted by the subscriber) can post and respond to status updates, check-ins, messages, images, attachments, and

28   links.
       [4] A "check-in" accesses the user's mobile device GPS to let friends know exactly where the subscriber is.

AFFIDAVIT OF SPECIAL AGENT JACK KANE - 14
USAO #2020R00825

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

information about the user's "Friends," such as status updates, check-ins, profile changes, and upcoming events.  Subscribers may also join groups or networks to connect and interact with other users who are members of the same group or network.  A Facebook network or group has options for adjusting privacy settings to grant or limit viewing or posting to the group's page.

30.     In Facebook's Photos application, subscribers can upload an unlimited number of albums and photos.  The Photos application can capture and store a geometric representation of a face (known as Faceprint data).  Subscribers can "tag" (i.e., label) other Facebook users depicted in a photo or video.  When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video.

31.     For Facebook's purposes, a subscriber's "Photoprint" includes all photos uploaded by that subscriber that have not been deleted, as well as all photos uploaded by any user that have that subscriber tagged in them.  As uploaded, a digital photo often contains embedded data about when and where it was taken, and other information on its genesis.  That information is called Exchangeable image file format (EXIF) information.  Facebook "scrapes" this information off of photos before placing them onto a page, but retains the original data.

32.     Facebook users can exchange private messages on Facebook with other users.  These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information.  Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

33.     Facebook captures and retains, for each subscriber account, data regarding the date, time, place, and IP addresses (IP Logs)  used when the subscriber accesses his/her account; actions taken and items viewed while using the account; and subscriber geographic location, if that setting is enabled.  This data cannot be manipulated by the subscriber.  Facebook also retains, and makes available to the account subscriber, all

1  information contained in Appendix A, attached and incorporated by reference.  Material

2  posted by the subscriber is retained by Facebook until sometime after it is deleted by the

3  subscriber.

4          34.    In Facebook jargon,

5          •    Subscriber "Basic Contact Information" includes subscriber, name,

6  birth date, email address(es), physical address (city, state, zip, country), all telephone

7  numbers, screen name and any associated website;

8          •    "Basic Subscriber Information (BSI)" is the subscriber's

9  identification number, name, email address, date and time stamp of account creation,

10  registered cellular telephone number, record of recent logins, and whether the

11  subscriber's page is publicly viewable; and

12          •    A "Neoprint" is an expanded view of a given subscriber profile.  It

13  includes subscriber profile contact information, friend lists; groups and networks of

14  which the subscriber is a member; "News Feed" information; "Wall" postings;  status

15  updates; links to videos, photographs, articles, and other items; event postings; rejected

16  "Friend" requests; comments; messages; gifts; pokes; tags; and information about the

17  subscriber's access and use of Facebook applications.

18          35.    Facebook subscribers may communicate directly with Facebook about

19  issues relating to their account, such as technical problems, billing inquiries, or

20  complaints from the subscriber or other users.  Social networking providers like

21  Facebook typically retain records about such communications, including records of

22  contacts between the subscriber and the provider's support services, as well records of

23  any actions taken by the provider or subscriber as a result of the communications.

24          36.    The company that operates Facebook.com is Facebook, Inc.  Facebook, Inc.

25  has established a contact address for Law Enforcement and has asked law enforcement to

26  serve warrants either by using a website that Facebook has set up for use by law

27  enforcement, or by postal mail.  Law enforcement regularly uses these to contact

28  Facebook.

AFFIDAVIT OF SPECIAL AGENT JACK KANE - 16
USAO #2020R00825

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## V. <u>INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED</u>

37.     Pursuant to Title 18, United States Code, Section 2703(g), this application and affidavit for a search warrant seeks authorization to permit Facebook, and its agents and employees, to assist agents in the execution of this warrant.  Once issued, the search warrant will be presented to Facebook with direction that the company identify the FACEBOOK ACCOUNTS described in Attachment A to this affidavit, as well as other subscriber and log records associated with the account, as set forth in Section I of Attachment B to this affidavit.

38.     The search warrant will direct Facebook to create an exact copy of the specified accounts and records.

39.     I, and/or other law enforcement personnel assisting with the investigation, will thereafter review the copy of the electronically stored data, and identify from among that content those items that come within the items identified in Section II to Attachment B, for seizure.

40.     Analyzing the data contained in the forensic image may require special technical skills, equipment, and software.  It could also be very time-consuming.  Searching by keywords, for example, can yield thousands of "hits," each of which must then be reviewed in context by the examiner to determine whether the data is within the scope of the warrant.  Merely finding a relevant "hit" does not end the review process.  Keywords used originally need to be modified continuously, based on interim results.  Certain file formats, moreover, do not lend themselves to keyword searches, as keywords, search text, and many common e-mail, database and spreadsheet applications do not store data as searchable text.  The data may be saved, instead, in proprietary non-text format.  And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases, as well.   Consistent with the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months.  All forensic analysis of the data will employ only those search protocols and

AFFIDAVIT OF SPECIAL AGENT JACK KANE - 17
USAO #2020R00825

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

methodologies reasonably designed to identify and seize the items identified in Section II of Attachment B to the warrant.

41.     Based on my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize a variety of messenger communications, chat logs, files, payment records and documents, that identify any users of the FACEBOOK ACCOUNTS and communications sent or received in temporal proximity to incriminating messages that provide context to the incriminating communications.

## VI. PRESERVATION REQUESTS TO FACEBOOK FOR THE SUBJECT ACCOUNTS

42.     I understand the contents of the FACEBOOK ACCOUNTS can only be obtained, in the Ninth Circuit, by means of a search warrant issued under authority of 18 U.S.C. § 2703(a), 2703(b)(1)(A), 2703(c)(1)(A), and Federal Rule of Criminal Procedure 41(e)(2)(b).  On or about September 21, 2020, the FBI made a preservation request to Facebook, requesting they preserve the contents related to the FACEBOOK ACCOUNTS.

## VII. PROTOCOL FOR SORTING SEIZABLE ELECTRONICALLY STORED INFORMATION

43.     In order to insure agents are limited in their search only to the contents of the FACEBOOK ACCOUNTS and any attachments, stored instant messages, stored voice messages, documents, and photographs associated therewith; in order to protect the privacy interests of other third parties who have accounts at Facebook; and in order to minimize disruptions to normal business operations of Facebook; this application seeks authorization to permit agents and employees of Facebook to assist in the execution of the warrant, pursuant to 18 U.S.C. § 2703(g), as follows:

a.     The search warrant will be presented to Facebook, with direction that it identify and isolate the FACEBOOK ACCOUNTS and associated records described in Section I of Attachment B.

AFFIDAVIT OF SPECIAL AGENT JACK KANE - 18
USAO #2020R00825

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

b.      Facebook will also be directed to create an exact duplicate in electronic form of the FACEBOOK ACCOUNTS and associated records specified in Section I of Attachment B, including an exact duplicate of the content including all messages stored in the FACEBOOK ACCOUNTS.

c.      Facebook shall then provide an exact digital copy of the contents of the FACEBOOK ACCOUNTS, as well as all other records associated with the account, to me, or to any other agent of the FBI.  Once the digital copy has been received from Facebook, that copy will, in turn, be forensically imaged and only that image will be reviewed and analyzed to identify communications and other data subject to seizure pursuant to Section II of Attachment B.  The original digital copy will be sealed and maintained to establish authenticity, if necessary.

d.      I, and/or other government personnel assisting in the investigation, will thereafter review the forensic image, and identify from among the content those items which come within the items identified in Section II to Attachment B, for seizure. Items identified for seizure will then be copied to separate media for future use in investigation and prosecution.

e.      All forensic analysis of the image data will employ only those search protocols and methodologies reasonably designed to identify and seize the items identified in Section II of Attachment B to the warrant.

44.    This warrant authorizes a review of the electronically stored data, communications, or other records and information seized, copied or disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized, copied or disclosed electronic data to the custody and control of attorneys for the government and their staff.

AFFIDAVIT OF SPECIAL AGENT JACK KANE - 19
USAO #2020R00825

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# VIII. **CONCLUSION**

45.     Based on the foregoing, I believe there is probable cause that evidence, fruits, and instrumentalities of violations of the crimes of possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c); unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g); conspiracy to commit robbery and robbery, in violation of 18 U.S.C. § 1951; and possession of a controlled substance, in violation of 21 U.S.C. § 844(a) are located in the FACEBOOK ACCOUNTS as more fully described in Attachment A to this Affidavit.  I therefore request that the Court issue a warrant authorizing a search of the FACEBOOK ACCOUNTS for the information set forth in section I of Attachment B of this Affidavit, and the seizure of the content more fully described in Section II of Attachment B hereto, incorporated herein by reference of any such items found therein.

JACK KANE, Affiant
Special Agent
Federal Bureau of Investigation

The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone on the 6th day of October, 2020.

HON. BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

AFFIDAVIT OF SPECIAL AGENT JACK KANE - 20
USAO #2020R00825

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970